UNITED STATES DISTRICT COURT

DISTRICT OF NEW HAMPSHIRE

<u>United States of America</u>

    v.                                                   Criminal No. 04-cr-216-01-SM
                                                                   Opinion No. 2005 DNH 161

<u>James Tobin</u>,

**O R D E R**

Defendant is charged in count one of the superseding indictment with conspiracy to injure and oppress New Hampshire citizens in the free exercise of their right to vote in a federal election, in violation of 18 U.S.C. § 241. Among other things, that statute makes it unlawful for

> two or more persons [to] conspire to injure, oppress, threaten, or intimidate any person in any State . . . in the free exercise or enjoyment of any right or privilege secured to him by the Constitution or laws of the United States.

Defendant moves to dismiss count one on grounds that § 241 did not provide him with fair notice that the acts he is accused of committing would violate the statute's prohibitions. The "fair warning requirement" serves the principle that "no man shall be held criminally responsible for conduct which he could not reasonably understand to be proscribed." <u>Bouie v. City of</u>

Columbia, 378 U.S. 347, 351 (1964) (quoting United States v. Harriss, 347 U.S. 612, 617 (1954)).  It requires "fair warning . . . in language that the common world will understand, of what the law intends to do if a certain line is passed.  To make the warning fair, so far as possible the line should be clear." McBoyle v. United States, 283 U.S. 25, 27 (1931) (Holmes, J.).

    The superseding indictment describes the charged conspiracy as one intent upon injuring or oppressing the free exercise of voting rights.  The alleged means by which defendant sought to achieve that goal was disruption of telephone communications, on election day, between eligible voters on the one hand, and both the New Hampshire Democratic Party and the Manchester Professional Firefighters Association, on the other.  The state party and the firefighters association were offering voters election-day transportation to the polls.  Defendant allegedly sought to disrupt the telephone lines to impede or prevent voters who needed transportation from getting to the polls, by making it difficult or impossible for them to obtain transportation from the party or firefighters (the overarching goal being to prevent voters from casting votes for Democratic candidates in the federal election).  Defendant says, in essence, that nothing in

§ 241, or court decisions construing it, or defining rights protected under federal law, gave him fair warning that the right to vote includes a "right to the privately-sponsored convenience at issue here – a free ride to the polls." But defendant describes the dispositive legal issue far too narrowly.

In United States v. Lanier, 520 U.S. 259 (1997), the Supreme Court (Souter, J.) again acknowledged the facial breadth of § 241 and its substantive analogue, § 242, noting as to both:

> Thus, in lieu of describing the specific conduct it forbids, each statute's general terms incorporate constitutional law by reference, and many of the incorporated constitutional guarantees are, of course, themselves stated with some catholicity of phrasing. The result is that neither the statutes nor a good many of their constitutional referents delineate the range of forbidden conduct with particularity.

Id. at 265 (citations omitted). But, the court observed, "[w]hen broad constitutional requirements have been 'made specific' by the text or settled interpretations, willful violators 'certainly are in no position to say that they had no adequate advance notice that they would be visited with punishment . . . . [t]hey are not punished for violating an unknowable something.'" Lanier, 520 U.S. at 267 (quoting Screws v. United States, 325

U.S. 91, 104 (1945)).  The earlier Screws decision, the court noted, limited prosecutions under § 242 (and, necessarily, § 241) to acts injuring or oppressing rights that have been "'made specific' by the time of the charged conduct."  Id. (citing United States v. Kozminski, 487 U.S. 931, 941 (1988)).

In gauging whether prior decisions give reasonable warning that the charged conduct violates constitutional rights, it is not necessary, as defendant seems to suggest, to identify prior decisions that "applied the right at issue to a factual situation that is 'fundamentally similar.'"  Lanier, 520 U.S. at 269.  Rather, it is sufficient if earlier decisions give reasonable warning that the charged conduct would violate specific constitutional rights.  Id. (citations omitted).  In that regard, "general statements of the law are not inherently incapable of giving fair and clear warning, and in other instances a general constitutional rule already identified in the decisional law may apply with obvious clarity to the specific conduct in question, even though 'the very action in question has [not] previously been held unlawful.'"  Lanier, 520 U.S. at 271 (citing Anderson v. Creighton, 483 U.S. 635, 640 (1987)).

4

The standard against which a "fair notice" challenge to prosecution under § 241 is properly measured, then, is an inherently practical one.  "[A]ll that can usefully be said about criminal liability under [§ 241] is that it may be imposed for deprivation of a constitutional right if, but only if, 'in the light of pre-existing law the unlawfulness [under the Constitution is] apparent.'  Where it is, the constitutional requirement of fair warning is satisfied."  Lanier, 520 U.S. at 271 (citing Anderson v. Creighton, 483 U.S. 635, 640 (1987)).

Here, the constitutional right at issue is fundamental – the right to vote.  It is a right unquestionably established and guaranteed by the Constitution and "hence is one secured by it to those citizens and inhabitants of the state entitled to exercise the right."  United States v. Classic, 313 U.S. 299, 314 (1941) (citing, inter alia, Ex Parte Yarbrough (The Ku Klux Cases), 110 U.S. 651 (1884); United States v. Mosley, 238 U.S. 383 (1915)).  Like § 242, § 241 "applies to the deprivation of the constitutional rights of qualified voters to choose representatives in Congress."  Classic, 313 U.S. at 328 (holding predecessor of § 242 applicable to deprivation of right to have votes counted in primary election).  And, "[o]bviously included

within the right to choose, secured by the Constitution, is the right of qualified voters within a state to cast their ballots and have them counted at Congressional elections." Classic, 313 U.S. at 315 (citations omitted).

Indeed, in Classic the Supreme Court reiterated what was by then clearly established law:

> Section 19 [a predecessor of § 241] makes it a crime to conspire to "injure" or "oppress" any citizen "in the free exercise . . . of any right or privilege secured to him by the Constitution." In Ex Parte Yarbrough, supra, as we have seen, it was held that the right to vote in a Congressional election is a right secured by the Constitution, and that a conspiracy to prevent the citizen from voting or to prevent the official count of his ballot when cast, is a conspiracy to injure and oppress the citizen in the free exercise of a right secured by the Constitution within the meaning of § 19 [§ 241].

Classic, 313 at 321 (emphasis supplied) (footnote omitted). So, the "fair warning" issue turns generally on whether a person of ordinary intelligence would know that the acts charged would violate specific constitutional rights. Or, with reference to the allegations in the superseding indictment, whether a person of ordinary intelligence would understand that participating in an agreement, or conspiracy, whose purpose is to prevent

qualified persons from freely exercising their right to vote, would violate § 241.  Plainly, a reasonable person would understand that the right to vote is a right protected by the Constitution.  He or she would also understand that knowingly joining a conspiracy with the specific intent to impede or prevent qualified persons from exercising the right to vote is conduct punishable under § 241.

Whether the government can meet its high burden of proof beyond a reasonable doubt in this case remains to be seen.  The government, for example, might not prove the existence of such an agreement, or defendant's knowing participation in it.  But, the superseding indictment unambiguously seeks to impose § 241 liability for conduct amounting to an unlawful agreement to willfully "injure" or "oppress" citizens in the <u>free exercise</u> or enjoyment of the specific constitutionally protected right to vote, an offense about which defendant had fair warning.  The specific means chosen by the alleged conspirators to achieve their goal of suppressing the number of votes cast for Democrats – jamming telephone lines of organizations providing qualified voters in need of transportation with rides to the polls (voters that would otherwise likely not vote) – is not significant in the

fair warning context.  It is no defense that legal precedent does not specifically hold that an agreement to interfere with voters' ability to get rides to the polls qualifies as injury or oppression of the right to vote under § 241; it is sufficient for due process purposes that precedent makes it perfectly clear that a conspiracy specifically aimed at impeding or preventing the free exercise of voting rights is unlawful.  See United States v. Ehrlichman, 546 F.2d 910, 921 (D.C. Cir. 1976).

## Conclusion

That a conspiracy or agreement to interfere with the free exercise of the right to vote would violate § 241 is established in the prior decisions of the Supreme Court.  Fair warning is given by the statute and decisional law that such conduct is prohibited.  That the tactics chosen to support the strategy – cutting off an available means of transportation to polling places, for the purpose of keeping qualified persons from voting – might be described as an indirect rather than a direct assault on the free exercise of Constitutionally protected rights, is of little consequence.  Nor can defendant properly assert that he was denied "fair warning" of the criminal nature of his alleged conduct simply because the method chosen to prevent qualified

voters from casting their ballots was novel or unique.  It is not the novelty of the means employed, or the originality of the scheme devised, that "fair notice" speaks to, but the purpose of the conspiracy or the object of the conduct.  Here, the alleged purpose of the charged conspiracy was to injure or oppress any person in the free exercise of the right to vote.  Such conduct is plainly prohibited by § 241.  If the government can prove defendant participated in that agreement, he can be held liable under § 241.

The gravamen of the conspiracy offense charged in the superseding indictment is an unlawful agreement – an agreement to interfere with voting rights – not its eventual success or failure, and not the specific ways or means employed to achieve the conspiracy's purpose.  And, the "general constitutional rule already identified in the decisional law" – the unlawfulness of interfering with the right to vote – applies "with obvious clarity to the specific conduct in question,"  Lanier, 520 U.S. at 271.  The defendant's assertion that he did not have "fair notice" that his alleged conduct violates § 241 is without merit.

The motion to dismiss Count 1 (document no. 78) is **DENIED.**

**SO ORDERED.**

_____
Steven J. McAuliffe
Chief Judge

November 30, 2005

cc: Andrew Levchuk, Esq.
    Lily N. Chinn, Esq.
    Nicholas A. Marsh, Esq.
    Brian T. Tucker, Esq.
    Bradley J. Bondi, Esq.
    Dane Butswinkas, Esq.
    Dennis M. Black, Esq.
    Tobin J. Romero, Esq.
    Peter G. Beeson, Esq.
    U.S. Marshal
    U.S. Probation