UNITED STATES DISTRICT COURT

                     DISTRICT OF NEW HAMPSHIRE


United States

     v.                              Crim. No. 04-cr-216-1-SM
                                     Opinion No. 2008 DNH 042
James Tobin


                           **O R D E R**


     In May of 2005, a federal grand jury returned a superceding indictment charging James Tobin with various crimes stemming from his involvement in a politically-motivated scheme to disrupt the telephone communications of both the New Hampshire Democratic Party and the Manchester firefighter's union on election day in 2002.  Mr. Tobin served as New England Regional Director of the Republican National Committee.  The Democratic Party and the union were involved in "get out the vote" efforts, offering voters free rides to the polls.  Tobin was charged, among other things, with conspiracy to violate the civil rights of voters, in violation of 18 U.S.C. § 241; conspiracy to "make[] or cause[] the telephone of another repeatedly or continuously to ring, with intent to harass any person at the called number," in violation

of 47 U.S.C. § 223(a)(1)(D); and aiding and abetting the violation of 47 U.S.C. § 223(a)(1)(D).

The primary object of the charged conspiracies and subsection (D) violation was to suppress the number of votes cast for Democratic candidates.  That objective was to be accomplished by jamming phone lines to prevent voters needing a ride to the polls from getting through to those providing rides.  On December 15, 2005, a petit jury returned verdicts acquitting Tobin of the first count (conspiracy to violate civil rights), but finding him guilty of the two counts under subsection 223(a)(1)(D).

Tobin appealed those convictions to the United States Court of Appeals for the First Circuit, asserting that the jury had not been properly instructed on the meaning of "intent to harass," as that phrase is used in subsection 223(a)(1)(D).  As noted, that subsection makes it a criminal offense to "make[] or cause[] the telephone of another repeatedly or continuously to ring, <u>with the intent to harass</u> any person at the called number" (emphasis supplied).  At Tobin's criminal trial, the jury was instructed as follows:

> A person uses the telephone to harass another if he or
> she intentionally employs the phone in a way that is
> not meant as a good faith effort to communicate with a
> person at the number called and is done with an
> unjustifiable motive. . . . . [If] the caller causes
> the telephone of another to ring repeatedly and the
> caller is doing so for reasons other than a good faith
> effort to communicate with someone at the number
> called, the law deems such conduct to be harassing.
> So, in the context of this case, the word harass means
> and describes conduct that is intentionally designed
> not to communicate, but instead to impede, distract,
> disrupt or undermine, in a substantial and not a
> trivial way, the ability of persons at the called
> numbers to communicate with others and to effectively
> go about their business.

United States v. Tobin, 480 F.3d 53, 55 (1st Cir. 2007) (quoting the criminal jury instructions).  In practical effect, the jury instruction included within the meaning of "harass" activities undertaken in bad faith and designed to disrupt telephonic communications.

On appeal, the court of appeals determined that the jury instruction gave "harass" too broad a meaning, thus expanding the statute's reach unduly.  The court also concluded that the prosecution's proposed construction of "harass" was too broad, and that the defendant's proposed construction was too narrow.  The appellate court construed the term "harass," as it is used in

subsection (D), to mean "provoke adverse [emotional] reactions in the called party."  Id. at 58.  Disruption of telephonic communications, without proof of an intent to harass (as defined by the court of appeals), was held to be outside the reach of subsection (D).

The court of appeals also recognized another critical legal issue, related to the word "intent" as it is used in subsection (D):

> Did an intent to harass exist if Tobin merely knew that anger and upset were almost certain to result from the carrying out of the scheme with its repeated ringing and blocking of communications?  Or must Tobin have had a subjective purpose (i.e., an aim or desire) to cause the subject to feel harassed?

Id. at 60 (emphasis in original).  Although the court of appeals chose not to resolve that controlling question of law (because the parties did not brief it sufficiently), the court did hold that if the statute requires a purpose to harass (as opposed to a more generalized recognition that adverse emotional reactions would be a foreseeable consequence of repeated hang-up calling), the evidence produced at trial was, as a matter of law,

insufficient to sustain a conviction, and Tobin would be entitled to judgment of acquittal.  Id. at 60, 62.

The court of appeals vacated Tobin's convictions and remanded the case for further proceedings.  Consequently, it falls to this court, at least in the first instance, to resolve the controlling legal question left unanswered by the court of appeals.  But, because authoritative resolution of the question remains with the court of appeals, and to avoid putting either the government or defendant through another, perhaps unnecessary, trial, this court advised the parties that should the issue be decided against defendant, the court would certify the legal question in support of an interlocutory appeal, before convening a retrial.[1]

---

[1] Defendant has filed a notice of appeal, interlocutory in character, from the final pretrial order scheduling trial, even though the final pretrial order made it clear that trial would not go forward without defendant first being afforded an opportunity to file an interlocutory appeal if the intent issue was resolved against him.  If resolved in defendant's favor, the trial would not go forward for different reasons.  While, ordinarily, docketing a notice of appeal divests the district court of jurisdiction over the underlying case, that is not so when a litigant purports to appeal a plainly unappealable order. In such a case "the trial court may treat the appeal for what it is — a sham — and continue to exercise jurisdiction over the case."  United States v. Mala, 7 F.3d 1058, 1061 (1st Cir. 1993).

As noted in the First Circuit's opinion, this is a close call and there are good arguments on both sides.  The outcome is important in deciding whether there will be a new trial or an end to the prosecution.  Id. at 60-61.  The First Circuit noted that the "statute's language could be read to embrace both [a purpose to harass in the emotion-provoking sense, and knowledge that harassment will assuredly result from the repeated calls] and one starts with the presumption that knowledge is enough."  Id. at 61.  But, as the court also pointedly noted, "there are arguments for a different result here."  Id.

In the context of this prosecution, the arguments for a different result here (i.e., requiring proof of a "purpose" to cause emotional upset, rather than merely "knowledge" that such upset is likely to occur) are persuasive.  The legislative history is not decidedly favorable either way and is hardly conclusive with respect to Congressional intent, but it does suggest that the basic evil the statute seeks to prevent is the use of repeated phone calls to upset the persons called.  It also suggests that the statute was not directly aimed at preventing the disruption of communications or phone jamming (which Congress

could have criminalized in unmistakable language, as several states have done). And, if mere knowledge of the likelihood of adverse emotional reaction to repeated calling were sufficient to meet the intent element, one can easily imagine a host of diverse species of calls that, literally, would come within the statute's reach, yet have completely legitimate (non-harassing) purposes (e.g., sales calls; collections; fund-raising). Hence, Chief Judge Boudin's comment that "[t]he need to interpolate a qualification could argue for a 'purpose' reading." Id. at 61. In other words, some qualifications or exceptions would have to be read into a mere knowledge requirement to exclude legitimate repeated calling that still would likely provoke adverse emotional reactions in those called. Otherwise, legitimate use of the telephone would be subject to criminal prosecution.

The difficulty is that most instances of repeated calling can be expected to "provoke an adverse emotional reaction" of some sort in the person called, and virtually every effort to disrupt telephonic communications by making repeated calls in sufficient numbers to jam phone lines will be understood to provoke an adverse emotional reaction in those whose activities

have been disrupted.  "Harass" as used in subsection (D) has been held not to encompass simple telephone disruption, unaccompanied by an intent (at some level) to provoke adverse emotional reactions in the persons called.

> We think that a Congress that sought to reach and outlaw attempts wrongfully to disrupt communications would have used quite different language (e.g., "impede" access or use, "disrupt"), along the lines of state statutes that are expressly so aimed [footnote omitted].
>
> * * *
>
> In sum we think that to equate harassment with any repeat calling done in bad faith is to enlarge the scope of the statute.  We read subsection (D) to require an intent to provoke adverse reactions in the called party and hold that a bad motive of some other kind standing alone is not enough.  There might be good reason for a federal statute directed to simple, deliberate disruption but that is a matter for Congress to determine.

Id. at 57-58.

There is little point in extended discussion here, because the issue is close and it is purely a question of law, which, as a practical matter, will ultimately be decided by the court of appeals upon de novo review.  The parties have extensively and capably briefed and argued the critical issue, as well as other

related issues specified by this court,[2] and the call still remains a close one.

Having thoroughly considered the issue and having carefully reviewed the court of appeals' opinion, as well as the legal memoranda submitted by and oral argument of the parties, the pertinent case law, and the statute's legislative history, the court concludes that, to violate subsection 223(a)(1)(D), one

---

[2] The court raised an issue regarding possible judicial estoppel, which would preclude the government from now contending that Tobin did intend to provoke adverse emotional reactions, under either a purpose or knowledge requirement, because the government seemingly conceded at trial that it did not contend that Tobin ever meant to cause any anxiety or distress among recipients of the phone jamming calls. See, e.g., United States v. Urso, 369 F. Supp. 2d 254, 264 (E.D.N.Y. 2005) ("However, there is a clear consensus that among the courts that have applied the doctrine of judicial estoppel to criminal proceedings that prosecutors should be barred from arguing a different theory of liability in a second prosecution only where the government's trial theories are 'inherently factually contradictory' and thus are 'irreconcilable' [citation omitted]."). The court also raised the issue of whether, even if knowledge (rather than purpose) was sufficient to satisfy the intent element, adverse emotional reaction was a consequence of the defendant's conduct that was so attenuated and distant that it should not be considered an object of the charged conspiracy. See, e.g., United States v. Goldberg, 105 F.3d 770, 774 (1st Cir. 1997) (Boudin, J.) (". . . [W]e leave untouched the general precept, namely, that mere collateral effects of jointly agreed-to activity, even if generally foreseeable, are not mechanically to be treated as an object of the conspiracy.")  The parties briefed those issue as well, but they are not dispositive and need not be resolved.

must have a specific purpose to cause emotional upset in a person at the telephone number called.  In other words, it is not enough merely to foresee that emotional upset is a likely consequence of repeated calls.  Instead, the actor must purposely seek to cause, or must desire to cause an adverse emotional reaction in a person at the called number.  That aim or purpose need not be the sole aim or purpose, but it must be an aim or purpose.

Given this court's determination that the statute does require a subjective purpose to cause an adverse emotional reaction in the person repeatedly called, and given the court of appeals' holding that, as a matter of law, the evidence produced at Tobin's trial was insufficient to prove that he harbored such an intent, see Tobin, 480 F.3d at 62, the court is constrained to conclude that Tobin is entitled to judgment of acquittal.

Parenthetically, the court notes that the court of appeals observed that prosecution of Tobin under subsection (D) was not a good "fit" despite his "unattractive conduct."  While I would not describe Tobin's conduct in so benign a way, I do agree that prosecution under subsection (D) is not a good fit since the

court of appeals has construed "harass" to mean "provoke an adverse emotional reaction," and the term does not cover disruption of telephone communications standing alone or resulting from any other bad motive.  Although the government has plausibly explained its trial position in a manner consistent with continued prosecution under the now applicable definition of "harass," still, it bears noting that, from this court's perspective, the government did not seriously contend, at any point, that Tobin's conduct ever involved an intent to cause an adverse emotional reaction in anyone.  His objective, like that of his charged co-conspirators, was dispassionate and insidious: to suppress as many votes for Democratic candidates as possible by sabotaging efforts to get citizens with transportation problems rides to polling places — citizens who the conspirators thought would largely vote for Democratic candidates.  The jury acquitted Tobin of conspiracy to deprive citizens of their constitutional right to vote and, as the means used to impede the get out the vote effort (disruption) does not fall within the reach of "harass," and the bad motive was not to cause emotional upset, continued prosecution (even should the court of appeals

ultimately determine that the less stringent knowledge standard should apply) remains a poor fit under subsection (D).

## Conclusion

Given the applicable definition of "harass" as used in subsection (D), and given this court's conclusion that the intent element requires the prosecution to prove that Tobin joined in the conspiracy to jam Democratic and firefighter union telephones for the purpose of provoking, or meaning to provoke, adverse reactions in the called parties, it is plain that the evidence presented was insufficient to support a jury finding of guilt beyond a reasonable doubt.  The evidence introduced at Tobin's trial was adequate to establish that Tobin knowingly and intentionally associated himself with the plan to disrupt the get-out-the-vote effort, meaning and intending to disrupt telephone communications for the purpose of suppressing the number of votes cast for Democratic candidates.  But, while deliberate disruption, vote suppression, and electoral success for his party were his goals, there was no evidence that Tobin specifically intended to provoke adverse emotional reactions in the people at the telephone numbers called.  At least the

evidence presented could not support such a finding beyond a reasonable doubt, as the court of appeals recognized.

Since the statute has been held not to reach deliberate disruption of telephonic communications, and because the evidence presented does not support guilt beyond a reasonable doubt with respect to an essential element of the charged offense — intent to harass — the convictions for conspiracy to violate, and aiding abetting a violation of subsection (D) cannot stand.

Tobin's motion for judgment of acquittal (document no. 217) is, therefore, granted.

**SO ORDERED.**

_____
Steven J. McAuliffe
Chief Judge

February 21, 2008

cc: Bradley J. Bondi, Esq.
    Dane Butswinkas, Esq.
    Dennis M. Black, Esq.
    Kenneth C. Bartholomew, Esq.
    Tobin J. Romero, Esq.
    Steven M. Gordon, Esq.
    Peter G. Beeson, Esq.
    Andrew Levchuk, Esq.
    Nicholas A. Marsh, Esq.
    Albert C. Rees, Jr., Esq.